**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| DOMINIC YARBROUGH<br>8718 Deer Hollow Drive<br>Dayton, OH 45424 | )<br>)<br>) | CASE NO. |
| | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| PAVE TECHNOLOGY CO.<br>2751 Thunderhawk Court<br>Dayton, OH 45414 | )<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| | ) | |
| PAVE TECHNOLOGY CO.<br>c/o Walter D. Wood<br>Registered Agent<br>2751 Thunderhawk Court<br>Dayton, OH 45414 | )<br>)<br>)<br>)<br>) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Dominic Yarbrough, by and through undersigned counsel, states and avers the following for the Complaint against Defendant Pave Technology Co.:

**PARTIES AND VENUE**

1. Yarbrough is a resident of the City of Dayton, County of Montgomery, State of Ohio.

2. Pave Technology Co. ("Pave") is a domestic corporation with its principal place of business located at 2751 Thunderhawk Court, Dayton, OH 45414.

3. All of the material events alleged in this Complaint occurred in Montgomery County.

4. Personal jurisdiction is proper over Defendants pursuant to R.C. §2307.382(A)(1) and (4).

5.  This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Yarbrough is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 2000e.

6.  This Court has supplemental jurisdiction over Yarbrough's state law claims pursuant to 28 U.S.C. § 1367, as Yarbrough's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8.  Within 300 days of the conduct alleged below, Yarbrough filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2023-01882 against Defendant ("Yarbrough EEOC Charge").

9.  Yarbrough dually filed the Yarbrough EEOC Charge with the Ohio Civil Rights Commission.

10. On or about November 8, 2023, the EEOC issued a Notice of Right to Sue letter to Yarbrough regarding the Yarbrough EEOC Charge.

11. Yarbrough received his Right to Sue letter from EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Yarbrough has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Yarbrough has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

14. Yarbrough has properly exhausted his administrative remedies pursuant to R.C. § 4112.052.

## **FACTS**

15. Yarbrough is a former employee of Pave.

16. Yarbrough was hired by Defendant in or around July 2006.

17. Yarbrough was employed by Defendant in the position of Lead Assembler.

18. Yarbrough is African American.

19. During Yarbrough's employment with Pave, an Assembler Tammy Huff called Yarbrough a "monkey."

20. Huff is White.

21. "Monkey" is frequently used as a racist slur against African Americans.

22. Yarbrough reported Huff's use of a racial slur to Defendant's Vice President of Operations, Brad Boomershine. ("First Protected Complaint")

23. Boomershine is White.

24. Boomershine stated in response that he didn't understand why Yarbrough was upset by Huff's use of a slur against him because he thought African Americans called each other the "n-word" all the time.

25. After Yarbrough's First Protected Complaint, Defendant issued him a written warning for allegedly causing a "disturbance" by telling Huff not to call him racist slurs.

26. Defendant did not issue written warnings to similarly situated White employees who argued with coworkers or otherwise caused disruptions at work.

27. Yarbrough's Assistant Production Supervisor retired and strongly recommended Yarbrough to Boomershine as her replacement.

28. Yarbrough met with Boomershine and discussed taking over as Assistant Production Supervisor in the near future.

29. Defendant hired Chris Harden to fill the role of Assistant Production Supervisor.

30. Harden is White.

31. Boomershine asked Yarbrough to train Harden in his new role, as Yarbrough already had the relevant specialized knowledge needed to do the job.

32. Yarbrough complained to Boomershine that the decision to hire Harding was race discrimination.("Second Protected Complaint")

33. In After Yarbrough's Second Protected Complaint, Defendant did not raise Yarbrough's pay despite annual raises being standard practice at Pave.

34. In or around August 2022, Defendant removed Yarbrough's Group Lead title and gave his responsibilities as Lead to Harden.

35. Defendant demoted Yarbrough.

36. In or around January 2023, Crystal Jackson threatened to shoot Yarbrough at work.

37. Jackson is Caucasian. (is this true?) add averments if he made a complaint and they failed to investigate if true. As written, you cannot see why you make this random comment and a month later he is fired. Sounds like needs to be a third protect3ed complaint and then hes fired?

38. Defendant terminated Yarbrough's employment on or about February 1, 2023.

39. Defendant terminated Yarbrough due to his race.

40. Defendant terminated Yarbrough in retaliation for his First Protected Complaint.

41. Defendant terminated Yarbrough in retaliation for his Second Protected Complaint.

42. Defendant knowingly terminated Yarbrough's employment.

43. Defendant knowingly took an adverse employment action against Yarbrough.

44. Defendant knowingly took an adverse action against Yarbrough.

45. Defendant intentionally terminated Yarbrough's employment.

46. Defendant intentionally took an adverse employment action against Yarbrough.

47. Defendant intentionally took an adverse action against Yarbrough.

48. Defendant knew that terminating Yarbrough would cause Yarbrough harm, including economic harm.

49. Defendant willfully terminated Yarbrough's employment.

50. As a result of Defendant's conduct, Yarbrough has suffered and will continue to suffer damages, including economic and emotional distress damages.

**FAILURE TO INVESTIGATE**

51. An investigation should include interviewing the complainant.

52. An investigation should include interviewing the subject of the complaint.

53. An investigation should include interviewing witnesses to the reported discrimination.

54. An investigation should include getting a written statement from the complainant.

55. An investigation should include getting a written statement from the subject of the complaint.

56. An investigation should include getting a written statement from witnesses to the reported discrimination.

57. In response to Yarbrough's Second Protected Complaint, Defendant did not interview Yarbrough.

58. In response to Yarbrough's Second Protected Complaint, Defendant did not interview Boomershine.

59. In response to Yarbrough's Second Protected Complaint, Defendant did not interview witnesses.

60. In response to Yarbrough's Second Protected Complaint, Defendant did not get a written statement from Yarbrough.

61. In response to Yarbrough's Second Protected Complaint, Defendant did not get a written statement from Boomershine.

62. In response to Yarbrough's Second Protected Complaint, Defendant did not get a written statement from witnesses.

63. Defendant did not investigate Yarbrough's Second Protected Complaint.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *ET SEQ.*

64. Yarbrough restates each and every prior paragraph of this Complaint as if it were fully restated herein.

65. Defendants took adverse employment actions against Yarbrough based on his race.

66. Defendants violated R.C. § 4112.02(A) when it took adverse employment actions against Yarbrough based on his race.

67. Defendant treated Yarbrough less favorably than other similarly situated employees based on his race.

68. Defendant violated R.C. § 4112.02(A) when it engaged in disparate treatment based on his race.

69. As a direct and proximate result of Defendant's race-based conduct, Yarbrough has suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT II: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

70. Yarbrough restates each and every prior paragraph of this Complaint as if it were fully restated herein.

71. Defendant took adverse employment actions against Yarbrough based on his race.

72. Defendant violated R.C. § 4112.02(A) when it took adverse employment actions against Yarbrough based on his race.

73. Defendant treated Yarbrough less favorably than other similarly situated employees based on his race.

74. Defendant violated R.C. § 4112.02(A) when it engaged in disparate treatment based on his race.

75. As a direct and proximate result of Defendant's race-based conduct, Yarbrough has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: HOSTILE WORK ENVIRONMENT BASED ON RACE DISCRIMINATION

76. Yarbrough restates each and every prior paragraph of this Complaint as if it were fully restated herein.

77. During his employment with Defendant, Yarbrough was subjected to offensive and harassing conduct by Huff based on his race.

78. Defendant knew of the harassing conduct against Yarbrough by Huff.

79. Defendant condoned, tolerated, and ratified this harassing conduct.

80. This harassing conduct was severe and/or pervasive.

81. This harassing conduct was offensive to Yarbrough.

82. This harassing conduct interfered with Yarbrough's ability to perform his job duties.

83. Huff's offensive and harassing conduct created a hostile and/or abusive work environment for Yarbrough.

84. Huff's offensive and harassing conduct created a hostile and/or abusive work environment for any reasonable person similarly situated to Yarbrough.

85. Defendant created a hostile work environment based on Yarbrough's race when it condoned, tolerated, and ratified Huff's harassing conduct.

86. Defendant violated R.C. § 4222.02(A) when it created a hostile work environment based on Yarbrough's race.

87. As a direct and proximate result of this racially hostile work environment, Yarbrough has suffered and will continue to suffer damages, including economic and emotional distress damages.

88. In creating a hostile work environment based on race discrimination, Defendant acted with malice or reckless indifference to the rights of Yarbrough, thereby entitling Yarbrough to an award of punitive damages.

**COUNT IV: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)**

89. Yarbrough restates each and every prior paragraph of this Complaint as if it were fully restated herein.

90. As a result of the Defendant's discriminatory conduct described above, Yarbrough complained about the race discrimination he was experiencing.

91. Subsequent to Yarbrough's Second Protected Complaint, Defendant denied Yarbrough a standard raise.

92. Subsequent to Yarbrough's Second Protected Complaint, Defendant removed Yarbrough's Group Lead title.

93. Subsequent to Yarbrough's Second Protected Complaint, Defendant terminated Yarbrough's employment.

94. As a direct and proximate result of Yarbrough's reporting of unlawful discrimination and harassment to Defendant, Defendants took adverse employment actions against Yarbrough.

95. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

96. As a direct and proximate result of Defendant's retaliatory conduct against and termination of Yarbrough's employment, Yarbrough suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT V: RETALIATION IN VIOLATION OF TITLE VII

97. Yarbrough restates each and every prior paragraph of this Complaint as if it were fully restated herein.

98. As a result of the Defendant's discriminatory conduct described above, Yarbrough complained about the race discrimination he was experiencing.

99. Subsequent to Yarbrough's Second Protected Complaint, Defendant denied Yarbrough a standard raise.

100. Subsequent to Yarbrough's Second Protected Complaint, Defendant removed Yarbrough's Group Lead title.

101. Subsequent to Yarbrough's Second Protected Complaint, Defendant terminated Yarbrough's employment.

102. As a direct and proximate result of Yarbrough's reporting of unlawful discrimination and harassment to Defendant, Defendants took adverse employment actions against Yarbrough.

103. Pursuant to Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

104. As a direct and proximate result of Defendant's retaliatory conduct against and termination of Yarbrough's employment, Yarbrough suffered and will continue to suffer damages, including economic and emotional distress damages.

### **DEMAND FOR RELIEF**

WHEREFORE, Dominic Yarbrough demands from Defendants the following:

(a) Issue a permanent injunction:

    (i)      Requiring Defendant to abolish discrimination, harassment, and retaliation;

    (ii)     Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendant to restore Yarbrough to one of the positions to which Yarbrough was entitled by virtue of Yarbrough's application and qualifications, and expunge Yarbrough's personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Yarbrough for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Yarbrough claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 556-4811
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com

*Attorney for Plaintiff Dominic Yarbrough*

## JURY DEMAND

Plaintiff Dominic Yarbrough demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
**DOSPITZ, THE EMPLOYEE'S LAW FIRM**